**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**BOBBY O. WILLIAMS,**

        **Petitioner,**

**vs.**                             **Civil No.  15-cv-457-DRH-CJP**

**JEFF HUTCHINSON,**

        **Respondent.**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

      In 1996, a jury in St. Clair County, Illinois, convicted Bobby O. Williams of first degree murder.  He was sentenced to death, but his sentence was vacated and later commuted.  He was then resentenced to life imprisonment.   Williams filed an amended petition for habeas relief pursuant to 28 U.S.C. §2254, Doc. 17.

      This matter is now before the Court on petitioner's Motion for Judgment on the Pleadings (Doc. 50), as well on as the merits of the amended petition.

### Grounds Asserted for Habeas Relief

The amended petition raises the following grounds:

A.    The trial judge erred in excluding Gerald Simpson's statement to the police indicating that Gerald was the second man (the non-shooter) in the surveillance video, and that the shooter was a man named Fred.

B.    (1) Trial counsel was ineffective in failing to file a second motion to quash arrest and suppress evidence and in failing to request a second suppression hearing based on exceptional circumstances, and (2) appellate counsel was ineffective in failing to raise trial counsel's

ineffectiveness.[1]

C.    There was insufficient evidence presented to the extended term qualifying jury to establish that petitioner was the person who actually murdered Sharon Bushong during the course of an armed robbery.

D.    The judge who sentenced petitioner to life imprisonment was biased.

E.    Petitioner's life sentence violates equal protection.[2]

### Relevant Facts and Procedural History

**1.    Facts**

The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which petitioner has not done.   28 U.S.C. §2254(e).

In his reply, petitioner suggests that the presumption of correctness applies only to the facts related to claim A because the Supreme Court of Illinois only ruled on that claim.   See, Doc. 48, pp. 2-3.   His suggestion is the result of incorrectly conflating the §2254(e) presumption of correctness of facts with the rule that the habeas court reviews the opinion of the last state court to decide the merits of a particular claim.   See, e.g., *Bolton v. Akpore*, 730 F.3d 685, 687 (7th Cir. 2013), in which the Seventh Circuit looked to the factual findings set forth by the state courts both on direct appeal and in postconviction proceedings.

The following description of the basic facts of the case are taken from the

---

[1] Respondent framed this ground slightly differently in his answer, Doc. 32.  The Court describes the ground as it is framed by petitioner in his reply, Doc. 48, pp. 5-6.

[2] The amended petition referred to the Eighth Amendment and the proportionate penalties clause of the Illinois constitution.  However, in his reply, petitioner denies that he is asserting either an Eighth Amendment claim or a claim under the proportionate penalties clause.  See, Doc. 48, Ex. 1, pp. 2-3.

Supreme Court of Illinois' decision affirming petitioner's conviction but vacating his death sentence on the initial direct appeal, *People v. Williams*, 737 N.E.2d 230 (Ill. 2000). A copy of the opinion is attached to Doc. 33 at Ex. 1, p. 1.[3]

> Shortly before 1 a.m. on November 3, 1994, Sharon Bushong was shot to death during a robbery of the Convenient Food Mart at 9618 West Main Street in Belleville, Illinois. At the time of her death, Bushong was working in the convenience store as the sole clerk. The principal pieces of physical evidence recovered from the crime scene were a surveillance videotape that had been recorded by the store's security cameras, and a spent cartridge case that had been fired from a .380–caliber pistol. Several fingerprints were collected from the convenience store, but none matched defendant's. In addition, a .380–caliber bullet was recovered from Bushong's body during her autopsy.
>
> The surveillance videotape was played for the jury at trial and is part of the record on appeal. . . . .The videotape is recorded in black and white and has no sound. . . .
>
> The surveillance videotape shows two African–American males entering the convenience store . . . . One of the men is wearing shorts and a short-sleeve, dark-colored shirt with piping or thin stripes around the collar, shoulders, sleeves and bottom. He is wearing only one, ankle-high sock. He is also wearing some type of light-colored garment, possibly boxer shorts, over his head. The second man is wearing a baseball cap, and is covering his face with his hands and shirt. Neither man's face is visible at any time.
>
> The individual with the garment over his head can be seen on the videotape taking Bushong behind the store counter and then standing to Bushong's right as she opens the cash register drawer. After Bushong opens the drawer, the man raises his left hand and shoots Bushong in the head. Bushong immediately falls to the ground. The man then shifts the gun to his right hand and removes the money from the cash register drawer with his left hand. During this time, the second man, who is on the public side of the store counter, can be seen leaning over and reaching into a display rack filled with potato chips. After the shooter removes the money from the cash register, the two men leave the store.

Doc. 33, Ex. 1, p. 7.

---

[3] The Court uses the document, exhibit and page numbers assigned by the CM/ECF electronic filing system.

An FBI forensic photographic examiner testified that his analysis indicated that the shooter on the videotape was six feet, one inch to six feet, two inches tall. Evidence established that Williams was six feet, two inches tall and that he was left-handed.  Doc. 33, Ex. 1, p.  7.

Williams was arrested on February 15, 1995, for a crime other than the murder of Sharon Bushong.  At the time of his arrest, he had a .380-caliber pistol in his jacket.  An Illinois State Police  forensic firearms examiner testified that the cartridge case found in the convenience store and the bullet recovered from the victim's body were fired from the pistol taken from Williams.   Doc. 33, Ex. 1, p. 7.

Witness Michael Cook testified that he had seen Williams wearing the same shirt as the shooter in the video and wearing only one sock.  Cook and two other witnesses testified that they had seen Williams with a .380-caliber pistol that resembled the one taken from Williams during the summer and winter of 1994 and in January 1995. Doc. 33, Ex. 1, p. 8.

Witness Fred Jones, a friend of Williams, testified that, on November 3 or November 4, 1994, Williams told him that Williams "and a couple more boys went up in Belleville to rob the convenience store and they shot the lady."  Jones also said that Williams was wearing the same shirt as worn by the shooter in the video when he made that statement.  Doc. 33, Ex. 1, p.  8.

Defendant's cousin, Andrew Towns, testified that Williams told him that Williams "and some more people robbed a liquor store or convenience store. And

while they were running out the store, [defendant] yelled, 'Don't forget the chips,' to another person."  Towns also testified that Williams said "he shot the bitch" who worked at the convenience store.  Doc. 33, Ex. 1, p. 9.

Additional facts related to the statement of Gerald Simpson will be described later in this Memorandum and Order.

**2.     State Court Proceedings**

On his initial direct appeal to the Supreme Court, Williams argued, as is relevant here, that the trial court erred in excluding the statement of Gerald Simpson in which Simpson said that he was the second man in the video and that the shooter was a man named Fred.  Petitioner's Brief, Doc. 33, Ex. 1, pp. 31-39. Petitioner's motion for rehearing again raised the exclusion of Gerald Simpson's statement.  Doc. 33, Ex. 2, pp. 39-42.  The Supreme Court denied rehearing.

After petitioner was resentenced to life imprisonment, he appealed, raising the following relevant points:

1.     The State failed to prove that petitioner was eligible for an extended-term sentence because it failed to prove beyond a reasonable doubt that "actually" killed Sharon Bushong.

2.     The judge at petitioner's resentencing was biased against him and should have been replaced.

3.     Petitioner's life sentence violates equal protection.

Petitioner's Brief, Doc. 33, Ex. 2, pp. 47-56.

The Illinois Appellate Court affirmed petitioner's conviction and sentence. Doc. 33, Ex. 3, p. 117.  Petitioner filed a PLA, raising the three points described above.  Doc. 33, Ex. 4, p. 2.  Leave to appeal was denied.  Doc. 33, Ex. 4, p. 41.

Williams then filed a postconviction petition.  He raised the following relevant arguments in his counseled brief on appeal from the dismissal of the petition:

> 1.    The petition stated the gist of a constitutional claim of ineffective assistance of trial and appellate counsel in failing to argue that the trial court should have conducted a second hearing on his motion to quash arrest and suppress evidence because new, important evidence was discovered at trial that had not been presented in the original proceedings on the motion.

Petitioner's Brief, Doc. 33, Ex. 6, pp. 23-24.

The Appellate Court affirmed the dismissal of the postconviction petition. Doc. 33, Ex. 6, p. 109.  Through counsel, petitioner filed a PLA raising two points regarding the Appellate Court's application of the Illinois postconviction statue. Neither point asserted the ineffective assistance of trial or appellate counsel.  Doc. 33, Ex. 7, pp. 11-24.

Leave to appeal was denied on March 25, 2015.  Doc. 33, Ex. 7, p. 28.

### Law Applicable to §2254 Petition

**1.    Substantive Law**

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA.  "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002).

Habeas is *not* yet another round of appellate review.   28 U.S.C. §2254(d)

restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases. " *Coleman v. Hardy*, 690 F.3d 811, 814 (7ᵗʰ Cir. 2012), citing *Williams v. Taylor*, 120 S. Ct. 1495, (2000).   A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*   The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1).   *Jackson v. Frank*, 348 F.3d 658, 661 (7ᵗʰ Cir. 2003).  The unreasonable application standard is "a difficult standard to meet." *Id.*, at 662.   Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id.*, at 662 (internal citation omitted).

## 2.   Timeliness, Exhaustion and Procedural Default

Respondent concedes petitioner has exhausted state remedies and that the amended habeas petition was timely filed.  Doc. 32, p. 8.  He argues that some of petitioner's grounds are procedurally defaulted.

A habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Bolton v. Akpore,* 730 F.3d 685, 694-696 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1732 (1999); see also 28 U.S.C. §2254(c).   Under the Illinois two-tiered appeals process, petitioners such as Williams must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id.* at 1732-1733.

### Analysis

**1.    Motion for Judgment on the Pleadings**

Fed. R. Civ. P. 12(c) provides that "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."

"A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *National Fidelity Life Insurance Company v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).   The standard for deciding a motion for judgment on the pleadings is analogous to the standard for deciding a motion for summary judgment, except that the Court may

consider only the content of the pleadings. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993).

The Federal Rules of Civil Procedure are not necessarily applicable in habeas cases. Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts states that "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."

This Court concludes that a motion for judgment on the pleadings is not a good fit in a habeas case, for two reasons. First, the language of Fed. R. Civ. P. 12(c) suggests that a motion for judgment on the pleadings is a device to narrow and dispose of issues, where appropriate, without the necessity of trial. See, Federal Practice & Procedure, Civil §1368 (3d Ed.) (A 12(c) "motion may be helpful in disposing of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further, thereby easing crowded trial dockets in the federal district courts. . . . ") Of course, there is no trial in the typical habeas action brought under §2254, and there is seldom a dispute as to the facts, given the presumption of correctness created by §2254(e). Further, a habeas court is not engaged in fact finding; rather, habeas review is generally limited to the facts as developed in the state courts.

Secondly, the standard for deciding a motion for judgment on the pleadings (judgment is to be granted in the moving party's favor only if that party is entitled to judgment as a matter of law) adds nothing to the process already inherent in a

habeas case.  Habeas cases are decided by judges, not juries, and the judge is to enter judgment in favor of the party who is entitled to judgment as a matter of law.

This Court has failed to uncover a Seventh Circuit case that applies Fed. R. Civ. P. 12(c) in a habeas action.  However, other district courts in this circuit have considered that issue and the analogous issue of whether a motion for summary judgment is appropriate in a habeas case, and have determined that it is not.  See, *Truly v. Robert*,  2008 WL 4449882, at *7 (N.D. Ill. Sept. 30, 2008)(motion for judgment on the pleadings and motion for summary judgment not applicable); *Gilyard v. Sternes*, 2004 WL 719261, at *2 (N.D. Ill. Mar. 31, 2004)("The issues presented in habeas petitions rarely require further factual development outside of the state court record, which the Respondent is obliged to file with its Answer. Consequently, summary judgment motions in habeas cases do not narrow and isolate factual issues for trial as they do in other civil cases."); *Brookhouse v. Ahitow*, No. 97 C 642, 1997 WL 445936, at *2, n.2  (N.D. Ill. Aug. 1, 1997)(summary judgment procedure not applicable).  This Court agrees with the reasoning of these cases.

Because the Court concludes that Fed. R. Civ. P. 12(c) is not consistent with 28 U.S.C. §2254 or the Rules Governing Section 2254 Cases in the United States District Courts, the Court concludes that Fed. R. Civ. P. 12(c) is not applicable in this habeas case.  Therefore, petitioner's Motion for Judgment on the Pleadings (Doc. 50) is DENIED.  However, the Court will consider the arguments set forth in

petitioner's motion in deciding the merits of his habeas petition.

**2.     Merits of the Petition**

The first ground concerns the exclusion of Gerald Simpson's statement. This issue was considered by the Supreme Court on Williams' first direct appeal, and the facts related to that issue are set forth in that court's opinion.

Petitioner was arrested for the murder of one Carlos Robertson in February 1995.  He was indicted on that offense in March 1995.  He was indicted on the Sharon Bushong murder in January 1996.  His trial on the Robertson murder charge resulted in a mistrial in July 1996.  Ex. 1, p. 11.

The murders of Sharon Bushong and Carlo Robertson were connected as follows:

> At the aggravation-mitigation phase of the sentencing hearing, the State introduced evidence that defendant [petitioner Williams] had murdered a second individual, Carlos Robertson, shortly after murdering Bushong. Robertson's body was discovered by police in his Washington Park home in the afternoon of November 3, 1994. Robertson had been shot twice in the head with different guns. Ballistics evidence established that one of the guns used to kill Robertson was the same .380–caliber weapon that had been used to murder Bushong and that had been taken from defendant at the time of his arrest in February 1995.

> Fred Jones testified again for the State at the aggravation-mitigation stage of sentencing. . . . Jones explained that sometime after midnight, on November 3, 1994, defendant, Carvon Jones, and Ricardo Spratt picked Jones up in defendant's car. Jones stated that defendant picked him up because he wanted Jones to help "get [defendant] inside Carlos Robertson's house." According to Jones, defendant said that Robertson and two others, Ricardo Spratt and Gerald Simpson, had been with him when he robbed the convenience store in Belleville and "shot the lady." Defendant also said that Robertson and Simpson had driven off without him after the robbery and murder. . . . When Robertson opened the door, defendant and Spratt rushed in. Defendant and Spratt then shot and killed Robertson for having abandoned defendant at the Belleville convenience store.

Ex. 1, p. 10.

Gerald Simpson, a cousin and roommate of Carlos Robertson, gave a statement to the police on November 4, 1994, after having been questioned by the police about the death of Carlos Robertson.  Ex. 1, p. 12.  This is the statement at issue in petitioner's first ground for habeas relief.  The Illinois Supreme Court described the statement:

> In his statement, Simpson explained that he, Carlos Robertson, and a man named "Fred" drove from Washington Park to Belleville around midnight on November 2, 1994. According to Simpson, Fred told him that they were going to Belleville to meet some women. When the group reached Belleville, Fred, who was driving, pulled into a convenience store. He then told the others that he was going to rob the store. Simpson asked him whether he was "for real." Fred started laughing and told Simpson to "come on." Fred and Simpson got out of the car while Robertson stayed behind. Fred put something that looked like boxer shorts over his head, and told Simpson to "look out for him" as he and Simpson entered the store. Once they were inside the store, according to Simpson, "Fred started behind the counter and told the white girl to open up the cash register. The white girl opened up the cash register, Fred shot the white girl once, * * * in the head. She fell to the floor and Fred took the money out of [the] cash register. Fred stuffed all of the money into his pants pocket." While Fred was robbing the store, Simpson tried to cover his face with his hands because he had seen a security camera when he entered the store. After robbing the store, Fred, Simpson and Robertson returned to Washington Park. Later, Fred murdered Robertson after the two had an argument.

Ex. 1, p. 12.

Simpson did not give Fred's last name in that statement, but he later said it was Fred Hoffman who shot Sharon Bushong.  Hoffman was arrested, but was not charged, in part because he was shorter than the height of the shooter in the videotape as determined by the FBI forensic examiner.   Simpson then gave another statement in which he again admitted that he was at the convenience

store when Sharon Bushong was murdered, but said that the shooter was Dewayne Willis.  Willis was not charged because he had a firm alibi.  *Ibid*.

Before trial, petitioner moved for permission to introduce the November 4, 1994, statement by Gerald Simpson.  He argued that the statement was admissible under the statement-against-penal-interest-rule.  The trial court denied the motion.  *Ibid*.

On habeas review, the federal court assesses the decision of the last state court to rule on the merits of the claim.  *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006).  Here, that is the decision of the Supreme Court of Illinois on the first direct appeal.

Pursuant to 28 U.S.C. §2254(d)(1), petitioner is entitled to habeas relief only if he establishes that the state court's decision was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court.  The analysis under 28 U.S.C. § 2254(d) looks to the law that was clearly established by Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 123 S. Ct. 2527, 2534 (2003).

The state court correctly identified *Chambers v. Mississippi*, 93 S. Ct. 1038 (1973), as the applicable Supreme Court precedent, and correctly summarized the holding of *Chambers*, i.e., that an out of court statement by a third party admitting to a crime may be admitted under the statement-against-penal-interest exception to the hearsay rule where the statement has sufficient indicia of reliability.  The state court correctly identified several factors for consideration,

including whether the statement was against the declarant's penal interest, whether it was corroborated by other evidence, and whether the declarant was available for cross examination, and noted that these factors are "indicia" rather than "hard and fast requirements. Ex. 1, p. 12.

The state court first considered whether Gerald Simpson's statement was against his penal interest.  The court noted that Simpson was tried separately from Williams, and the state used Simpson's statement against Simpson at his trial.[4]  The court concluded that Simpson's statement was against Simpson's penal interest insofar as he admitted that he accompanied Fred into the convenience store after Fred told him that he was going to rob the store, and further admitted that Fred told Simpson to "look out for him" as they entered the store.  However, the state court further determined that other parts of the statement were not against Simpson's penal interest; what petitioner wanted admitted was the part of the statement that identified Fred as the shooter, and that part, the court concluded, was not against Simpson's penal interest.  In fact, Simpson's references to Fred all sought to portray Fred as the more culpable party, and, as such, were self-exculpatory as to Simpson.  The state court also noted that there was "absolutely nothing in the record to corroborate" Simpson's identification of Fred as the shooter.  Fred was identified as Fred Hoffman, but Fred Hoffman was excluded because he was not tall enough.  A few days after giving his statement, Simpson identified Dewayne Willis as the shooter.  Willis was

---

[4] In footnote 2, the Illinois Supreme Court noted that Simpson's trial ended in a mistrial, and the record before it did not reveal whether he was retried.  See, Ex. 1, p. 29.

excluded because he had a firm alibi. The state court thus concluded that Simpson's statement that Fred was the shooter was not given under circumstances that provided "considerable assurance" of its reliability, citing a state court case that quoted *Chambers*. Ex. 1, pp. 13-14.

Petitioner argues that the state court unreasonably applied *Chambers* because portions of Simpson's statement were corroborated by the videotape. See, Doc. 49, Ex. 1, pp. 3-4. However, the details that were corroborated, such as Simpson's clothes and the fact that the shooter had boxer shorts on his head, were irrelevant to the identification of Fred as the shooter. The value of the statement in William's defense was that it identified Fred, and not Williams, as the shooter. The state court correctly found that the identification of Fred as the shooter was completely uncorroborated. Further, the record indicated that it was not true. Fred Hoffman was excluded because he was too short. And, Simpson contradicted his statement only a few days later by identifying Dewayne Willis, another identification that proved to be false.

Petitioner also argues that Simpson's statement was reliable because it was self-incriminating. Doc. 49, Ex. 1, pp. 13-16. However, the state court's determination that the identification of Fred as the shooter was not incriminating to Simpson was reasonable. The state court's application of *Chambers* was not incorrect, much less unreasonable. See, *Carson v. Peters*, 42 F.3d 384, 386 (7th Cir. 1994), noting that "Portions of inculpatory statements that pose no risk to the declarants are not particularly reliable; they are just garden variety hearsay."

Petitioner also makes much of the fact that the state used Simpson's statement against Simpson at Simpson's trial.  Doc. 49, Ex. 1, pp. 16-18; Ex. 2, pp. 1-2.  However, the statement was admissible at Simpson's trial to show that Simpson participated in the robbery and was accountable for the murder of Sharon Bushong.  As the state court correctly pointed out that, the identity of the shooter was immaterial in Simpson's trial.  Ex. 1, p. 14.  The identity of the shooter was the issue at Williams' trial, and Simpson's statement was not reliable on that point.  See, *Carson*, 42 F.3d 386 ("If a statement is reliable enough to condemn its author, how can it be too unreliable to use when it cuts against the prosecutor? The answer is that different parts of a statement may have radically different degrees of reliability.")

The Supreme Court recently reiterated that the standard for showing that the state court unreasonably applied clearly established federal law is "intentionally difficult to meet" and requires a showing that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)(internal citations omitted).  Petitioner has not come close to meeting that high standard here.   In addition, this Court agrees with respondent that the exclusion of Simpson's statement was not prejudicial to petitioner.  Simpson's statement was extremely weak evidence as to the identity of the shooter, since Simpson falsely identified two people.

The second ground (ineffective assistance of trial and appellate counsel) is procedurally defaulted.  Williams raised ineffective assistance of counsel in his postconviction petition and on appeal from the dismissal of the petition, but did not raise it in his PLA.

The PLA, which was filed by counsel, raised only two issues.  First, that the trial court's sua sponte dismissal without prejudice of his first postconviction petition, filed while his first direct appeal was pending, was error under state law.  Secondly, that the Appellate Court disregarded the Illinois Postconviction Hearing Act in refusing to consider petitioner's claim of ineffective assistance because petitioner failed to provide factual support for his assertions, such as a transcript.  Doc. 33, Ex. 7, p. 13.

Petitioner argues that the PLA fairly presented his Sixth Amendment ineffective assistance of counsel claim because it "briefly provide[d] facts to support those claims" and because the PLA cited to the Appellate Court decision, which, in turn, cited *Strickland v. Washington*.  104 S.Ct. 2052 (1984).  See, Doc. 49, pp. 15-16.  This Court disagrees.

An issue is not fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 124 S. Ct. 1347, 1351 (2004).  The Appellate Court's citation to *Strickland* does not constitute fair presentment of the Sixth Amendment claim to the Supreme Court.  Here, the PLA

clearly asked the Supreme Court to review the Appellate Court's application of state law (the Illinois Postconviction Hearing Act), and not the substantive federal law issue of whether counsel had rendered ineffective assistance.

Petitioner also argues that his ineffective assistance claim was not adjudicated on the merits in state court because the Appellate Court misconstrued the nature of his ineffective assistance claim in the first instance and denied him a "full and fair hearing."  He reasons that he is entitled to a de novo review of his ineffective assistance of counsel claim here.  Doc. 49, Ex. 2, p. 6, et seq.  He is incorrect.

First, petitioner's argument is contradicted by the record.  The Appellate Court did, in fact, adjudicate petitioner's claim on the merits.  See, doc. 33, Ex. 6, pp. 115-120.  Putting that fact aside, petitioner's argument assumes that a failure of the state court to address an argument would relieve him of the burden of presenting that argument for one full round of state court review.  He is incorrect. A claim that has not been presented for one full round of state court review is procedurally defaulted and cannot be considered on habeas review.  *O'Sullivan*, 119 S.Ct. at 1732-1733.  As was explained above, the PLA sought review only of the Appellate Court's application of state law; it did not present a substantive Sixth Amendment claim of ineffective assistance of counsel.  Therefore, Williams' claim of ineffective assistance of counsel is defaulted and cannot be considered here.

Petitioner's third claim is that the state failed to prove to the extended-term

qualifying jury that he was the person who actually murdered Sharon Bushong, in violation of his "liberty interest" and *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000). Doc. 17, p. 39. At page 48 of his amended petition, he complains that the state did not prove that he actually and intentionally killed Sharon Bushong. And, at page 8 of his motion for judgment on the pleadings, Doc. 50, petitioner argues that his "liberty interest" claim was not adjudicated on the merits in state court and should therefore be reviewed de novo here.

Respondent argues, correctly, that the claim that the state did not prove that he intentionally (as opposed to actually) killed Sharon Bushong was not presented for one full round of state court review. This Court agrees. The claim that was presented in state court was that the State failed to prove that petitioner was eligible for an extended-term sentence because it failed to prove beyond a reasonable doubt that "actually" (not "intentionally") killed Sharon Bushong. Petitioner's Brief, Doc. 33, Ex. 2, pp. 47-56.

Petitioner's suggestion that he is entitled to de novo review of his "liberty interest" claim is incorrect. Rather, that claim is defaulted because it was raised only in his reply brief on his second direct appeal, Doc. 33, Ex. 3, p. 65. In any event, the "liberty interest" argument adds little to the *Apprendi* argument.

Petitioner's death sentence was vacated on his first direct appeal and was then commuted by the governor. The state filed a notice that it intended to seek an extended-term sentence, and a jury was empaneled to determine whether one of the statutory aggravating factors was present. The essence of both the

*Apprendi* and "liberty interest" arguments is that the state did not present sufficient evidence to *this* jury to prove beyond a reasonable doubt that Williams actually killed Sharon Bushong.

The Appellate Court considered this claim on petitioner's second direct appeal.  The Appellate Court noted that, on his first direct appeal, the Supreme Court determined that the evidence presented at trial was sufficient to support the jury's verdict finding him guilty of first-degree murder.  At the extended-term sentencing hearing, certified copies of the indictment charging petitioner with first degree murder and of the original jury's verdict finding him guilty of first degree murder were introduced into evidence, along with the videotape showing the murder and robbery.  The jury found that petitioner was eligible for an extended-term sentence because he murdered Sharon Bushong in the course of another felony, pursuant to 720 ILCS 5/9-1(b)(6) (1994).[5]  The Appellate Court concluded that *Apprendi* was satisfied by the submission of the indictment and the original jury's verdict because a "rational jury could have found the qualifying factor based upon the indictment and the guilty verdict."  Doc. 33, Ex. 3, pp. 127-131.

Petitioner presents no Supreme Court authority for the proposition that the state was prohibited from relying on the indictment and the trial jury's verdict to prove to the enhanced-sentence jury that he actually killed Sharon Bushong in the court of another felony.  *Apprendi*, of course, did not consider that precise issue.  The Seventh Circuit has held that *Apprendi* does not require the state to prove

---

[5] Petitioner elected to be sentenced under the 1994 version of the statute, which has since been amended.  See, Doc. 34, Ex. 6, pp. 40-41.

facts already found by the guilt phase jury for a second time to an enhanced-sentence. *Mack v. McCann*, 530 F.3d 523, 536-537 (7th Cir. 2008).

The jury at petitioner's trial was instructed that, in order to find petitioner guilty of first degree murder, it must first find that he "performed the acts which caused the death of Sharon Bushong." Jury Instruction, Doc. 34, Ex. 5, p. 10. It follows, then, that the trial jury found that petitioner actually killed Sharon Bushong. There is no Supreme Court precedent for the argument that the state was required to start from scratch with the extended-term sentence jury rather than relying on the trial verdict to prove that petitioner actually killed Sharon Bushong.

Petitioner's fourth claim is that the judge who imposed the life sentence, Judge John Baricevic, was prejudiced against him because the judge knew that a jury had sentenced him to death and that the governor had commuted his death sentence.

Once again, petitioner argues that this claim should be reviewed de novo because the state court did not adjudicate it on the merits. He is incorrect. The Appellate Court decided this issue on petitioner's second direct appeal. Doc. 33, Ex. 3, pp. 128-129.

The Court cited to *People v. Del Vecchio*, 544 N.E.2d 312 (Ill. 1989). *Del Vecchio* cited relevant United States Supreme Court cases on disqualification of judges for bias or prejudice:

> The United States Supreme Court has recognized that the issue of judicial disqualification does not necessarily involve a question of constitutional

validity. The Supreme Court has stated that "matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion. [Citation.] But it certainly violates the 14th Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." (*Tumey v. Ohio* (1927), 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749, 754; see *Aetna Life Insurance Co. v. Lavoie* (1986), 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823; *Ward v. Village of Monroeville* (1972), 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267.) Another guiding principle on the issue of judicial bias is whether the case involves a possible temptation such that the average person, acting as judge, could not hold the balance nice, clear and true between the State and the accused. (*Tumey v. Ohio* (1927), 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749, 758.) Recently, the Supreme Court recognized that only under the most extreme cases would disqualification on the basis of bias or prejudice be constitutionally required. *Aetna Life Insurance Co. v. Lavoie* (1986), 475 U.S. 813, 821, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823, 832.

*Del Vecchio*, 544 N.E.2d at 316–17.   Thus, the Appellate Court was aware of the federal nature of the claim and adjudicated the claim on the merits.   The claim must therefore be reviewed under 28 U.S.C. §2254(d)(1).   *Harrington v. Richter*, 131 S. Ct. 770, 783 – 85 (2011).

Petitioner has not demonstrated that the Appellate Court's decision was contrary to or an unreasonable application of established federal law as determined by the Supreme Court.   Petitioner has not identified a Supreme Court precedent holding that due process requires the removal of a judge who has knowledge about a case similar to what Judge Baricevic knew here.   At Doc. 50, Ex. 3, p. 2, petitioner cites *Liteky v. United States*, 114 S.Ct. 1147 (1994), but that case is not relevant here because it was decided on the basis of a federal statute (28 U.S.C. §455(a)) and not on constitutional grounds.

It is inconceivable that *any* judge to whom petitioner's case was assigned for resentencing would not be aware that Williams had been sentenced to death, that his death sentence had been vacated by the Illinois Supreme Court, and that his death sentence had been commuted by the governor.  The state court concluded that petitioner had not shown that knowledge of these fact caused Judge Baricevic to be actually prejudiced against him.    Ex. 3, p. 128.   Petitioner has not demonstrated that that conclusion was unreasonable.

Petitioner's last point is that the Illinois sentencing statutes under which he was sentenced violate equal protection.  He argues that the statutes create three different maximum sentences for first degree murder, and therefore they treat similarly situated persons differently.

The Appellate Court decided petitioner's equal protection claim in his second direct appeal.  The court rejected his claim because the statutory scheme was reasonably related to the purpose of the legislature in enacting the statutes, i.e., the protection of society from persons who kill during the commission of violent crimes.  Doc. 33, Ex. 3, pp. 137-138.  Therefore, the claim is reviewed deferentially under §2254(d)(1).

The state court applied a general equal protection analysis to the issue, and petitioner has not demonstrated that the analysis was incorrect.  Furthermore, the United States Supreme Court has never held that sentencing statues which permit different sentences for persons convicted of the same crime are unconstitutional.   In fact, Supreme Court precedent suggests the opposite:

> Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear. The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences.

*Williams v. Illinois*, 90 S. Ct. 2018, 2023 (1970).  See also, *Holman v. Page*, 95 F.3d 481, 486 (7th Cir. 1996) ("[I]t is not unconstitutional for Illinois to give a sentencing judge a choice between two statutes providing different penalties for identical conduct"), overruled on other grounds by *Owens v. United States*, 387 F.3d 607 (7th Cir. 2004).

### 3.    Cause and Prejudice; Actual Innocence

Petitioner has procedurally defaulted several of his claims.  Procedural default can be overcome by a showing of cause and prejudice.  Petitioner must establish cause for his default and prejudice, or that failure to consider the claim would likely result in a miscarriage of justice.  *Coleman v. Thompson*, 111 S. Ct. 2546, 2565 (1991).

Williams has not made any attempt to show cause for his default or that failure to consider his arguments would result in a miscarriage of justice.  This Court cannot make the cause and prejudice argument for him.  *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014).

Lastly, petitioner has not made a claim of actual innocence sufficient to overcome his procedural default.  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

### 4. Objections to and Appeal of Magistrate Judge Decision (Doc. 108)

Under FEDERAL RULE OF CIVIL PROCEDURE 72(a), the Court may modify or reverse a magistrate judge on a non-dispositive issue upon a showing that the magistrate judge's decision is "clearly erroneous or contrary to the law." A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926 (7th Cir. 1997).

In applying this "clear error" standard, a district judge may overturn a decision "only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). Accordingly, the Court will affirm Judge Proud's decision unless his factual findings are clearly erroneous or his legal conclusions are contrary to law. Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A); S.D. Ill. Local Rule 73.1(a).

The Court finds that petitioner has not established that Judge Proud's orders were clearly erroneous or contrary to the law in this case. Specifically, in at least four prior orders, this Court has explained that habeas review is generally limited to materials that were before the state court and that, except in unusual circumstances, an evidentiary hearing is precluded. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1399 (2011). Simply because petitioner does not agree with the law, the disagreement is not indicative of a mistake warranting reversal of the

magistrate judge's prior decisions. Therefore, based on the law of this Circuit, it is clear that good cause has not been shown to warrant reversal of Judge Proud's Orders (Docs. 104-106).  Petitioner failed to show that Judge Proud's decisions were clearly erroneous or contrary to law. Upon further review of the pleadings, the Court also finds petitioner's objections to be meritless. Thus the Court **OVERRULES** the objections and **AFFIRMS** Magistrate Judge Proud's Orders (Docs. 104-106).

<u>**Certificate of Appealability**</u>

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).

In order for a certificate of appealability to issue, petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong."  See, *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).  Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show *both* that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel, Ibid.*

Here, no reasonable jurist would find it debatable whether this Court's rulings on the substantive issues or on procedural default were correct. Therefore, the Court denies a certificate of appealability.

## Conclusion

Bobby O. Williams' amended petition for habeas relief under 28 U.S.C. §2254 **(Doc. 17)** is **DENIED,** as is his Motion for Judgment on the Pleadings **(Doc. 50).**

The Court denies a certificate of appealability.

The Clerk of Court shall enter judgment in favor of respondent.

**IT IS SO ORDERED.**

**DATE: November 9, 2016**

Digitally signed by
Judge David R. Herndon
Date: 2016.11.09
15:09:12 -06'00'

**United States District Court Judge**

## **Notice**

If petitioner wishes to appeal the dismissal or denial of his petition, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). A motion for leave to appeal in forma pauperis should set forth the issues petitioner plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C).

A certificate of appealability is required to appeal from the dismissal or denial of a §2254 petition. Rule 11 of the Rules Governing §2254 Cases requires that, when entering a final order adverse to the petitioner, the district court must issue or deny a certificate of appealability. Here, the Court has denied a certificate. In order to appeal the dismissal or denial of his petition, petitioner must obtain a certificate of appealability from the court of appeals.

Petitioner cannot appeal from this Court's denial of a certificate of appealability. Further, a motion to reconsider the denial does not extend the time for appeal. See, Rule 11(a).

Petitioner is further advised that a motion to alter or amend the judgment filed pursuant to Federal Rule of Civil Procedure 59(e) must be filed no later than 28 days after the entry of the judgment—a deadline that cannot be extended. A proper and timely Rule 59(e) motion may toll the thirty day appeal deadline. Other motions, including a Rule 60 motion for relief from a final judgment, order, or proceeding, do not toll the deadline for an appeal.